Robert E. RIPPY, Appellant,

v.

UNITED STATES, Appellee.

No. 7477.

District of Columbia Court of Appeals.

Argued May 16, 1974.

Decided July 10, 1974.

Rehearing en Banc Denied Aug. 21, 1974.

James E. Caulfield, appointed by this court, for appellant.

Steven R. Schaars, Asst. U. S. Atty., with whom Earl J. Silbert, U. S. Atty. and John A. Terry, Asst. U. S. Atty., were on the brief, for appellee.

Before REILLY, Chief Judge, and KELLY and FICKLING, Associate Judges.

REILLY, Chief Judge:

Appellant was convicted of carrying a pistol without a license (after a previous felony conviction) in violation of D.C.Code 1973, § 22–3204. On appeal, he contends that the trial court erred in denying his pretrial motion to suppress evidence—*i. e.*, a pistol—on alternative grounds: (1) that the discovery of the pistol was the result of an unreasonable search and (2) that the arrest which led to this discovery was a sham.

At the suppression hearing, the government called only one witness, John Dawley, an officer in the narcotics division of the Metropolitan Police Department. He testified that prior to the challenged arrest, he had been assigned to investigate appellant as a possible major violator of the narcotics statutes. The latter had recently been paroled after serving a term for receiving stolen property.

Soon thereafter, the officer was told by an informant that appellant was trafficking in narcotics. Upon discovering in appellant's file an outstanding warrant charging him with assault, the officer sought to find appellant and arrest him. The warrant had been issued on June 19, 1972 and was based upon allegations of punching a counselor at a halfway house where appellant had been committed. A notation on the warrant indicated that appellant was "currently in jail for leaving the halfway house."

About 9:15 p. m. on January 14, 1973— two or three days after the discovery of the outstanding warrant—Officer Dawley and another officer dressed in plain clothes

in an unmarked car, observed appellant filling the tank of his automobile at a gasoline station. Two minutes later, when he pulled out of the station, the officers signaled him to stop. Appellant stopped, got out, and went back to the police car. After verifying his identity, Officer Dawley advised him of the warrant and placed him under arrest for the offense specified in that document.[1]

Appellant then asked Dawley if his companion, a passenger, could drive the car to appellant's home. The officer assented provided that his friend was in possession of a driver's permit. Approaching the car to examine this permit, the officer went into the car through the passenger side,[2] and checked under the seat with his hand for weapons that might be accessible to the passenger when the latter moved over to take the wheel. He found nothing.

As he was standing up on the pavement again, the officer though physically outside the car, noticed a pistol partially concealed by a lowered armrest in the center of the front seat. Although it was dark, the pistol was rendered visible by the lights under the dashboard and high intensity street lamps above. Appellant and his friend were then charged with carrying a dangerous weapon.[3]

Appellant contends that the search of his car was unwarranted in that the officer had no reasonable grounds to believe his car contained fruits of a crime or evidence of the offense for which he was being arrested. The government argues that the pistol was in an area within appellant's immediate control thereby justifying a protective search for weapons. We need not reach this issue, however, as we agree with the trial court that the seizure of this pistol was justified under the so-called "plain

view" doctrine. As stated by the Supreme Court in Harris v. United States, 390 U.S. 234, 236, 88 S.Ct. 992, 993, 19 L.Ed.2d 1067 (1968):

> It has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence.

*Accord,* Palmore v. United States, D.C. App., 290 A.2d 573 (1972), aff'd, 411 U.S. 389, 93 S.Ct. 1670, 36 L.Ed.2d 342 (1973).

■ The trial court resolved the disputed factual questions relating to the plain view issue against appellant. We cannot say that this finding was clearly erroneous. That the officer might not have seen the pistol unless he was bending down is immaterial. An object may be regarded as in plain view even though the observer had to "crane his neck, or bend over, or squat," in order to spot it. James v. United States, 135 U.S.App.D.C. 314, 315 n. 1, 418 F.2d 1150, 1151 n. 1 (1969); *accord,* Borum v. United States, D.C.App., 318 A.2d 590 (1974); United States v. Wright, 146 U.S.App.D.C. 126, 449 F.2d 1355 (1971), cert. denied, 405 U.S. 947, 92 S.Ct. 986, 30 L. Ed.2d 817 (1972); United States v. McMillon, 350 F.Supp. 593 (D.D.C.1972).

■ There can be no question of Officer Dawley's right to be where he was when he first saw the pistol. Being authorized to require the substitute driver to show his permit, D.C.Code 1973, § 40–301(c), the officer's visit to the vehicle was proper.

Appellant relies upon Silverman v. United States, 365 U.S. 505, 81 S.Ct. 679, 5 L. Ed.2d 734 (1961), and Jones v. United States, 357 U.S. 493, 78 S.Ct. 1253, 2 L.

---

1. The case upon which the warrant was based was *nolle prossed* the following day.

2. It is not clear from the record whether the officer opened the car door or appellant had left it open when he emerged.

3. The foregoing summary of the facts is based upon the testimony of Officer Dawley, which the trial court found to be truthful. Most of it was undisputed, except for appellant's generalized testimony to the effect that the armrest was so large that no object under it could be seen.

Ed.2d 1514 (1958), but these cases are distinguishable in that they involved intrusions into the privacy of the home. This case, in contrast, is another example of the " . . . extensive, and often noncriminal contact with automobiles [that] will bring local officials in 'plain view' of evidence, fruits, or instrumentalities of a crime, or contraband." Cady v. Dombrowski, 413 U.S. 433, 442, 93 S.Ct. 2523, 2528, 37 L.Ed.2d 706 (1973).

Appellant also contends that the arrest was a sham, a calculated pretext to search his car for narcotics. Inasmuch as the weapon when discovered was in plain view, rather than uncovered in the course of a search incident to arrest, this argument is scarcely relevant. Wise v. United States, D.C.App., 277 A.2d 476 (1971); United States v. Johnson, 143 U.S.App.D. C. 215, 442 F.2d 1239 (1971). In any event, the motivation or primary purpose of the arresting officer is essentially a question of fact resolved in this instance by the trial court. United States v. Becker, 485 F.2d 51 (6th Cir. 1973), cert. denied, —— U.S. ——, 94 S.Ct. 2404, 40 L.Ed. 2d 771 (1974); Williams v. United States, 418 F.2d 159 (9th Cir. 1969), aff'd, 401 U. S. 646, 91 S.Ct. 1148, 28 L.Ed.2d 388 (1971).

Here the trial court made a finding, amply supported by the evidence, that the officer did not use the arrest as a pretext to search appellant's car for unrelated purposes. The court found that the warrant was issued on complaint of a citizen, rather than a police officer,[4] that it was valid on its face,[5] that the officer was authorized to serve it,[6] and had exercised proper diligence in verifying the legality of the warrant.

Affirmed.

4. The crime charged was not a trivial offense, such as a minor traffic violation, but rather a crime against a person with a maximum penalty of twelve months in jail and a $500 fine.

5. See D.C.Code 1973, § 23–563(b); Super. Ct.Crim.R. 4(c)(2).

6. See Super.Ct.Crim.R. 4(c)(1).