**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Lonjinos Ramos CONTRERAS,**
**Defendant-Appellant.**

**No. 79-5086**
**Summary Calendar.***

United States Court of Appeals,
Fifth Circuit.

Sept. 24, 1979.

---

* Rule 18, 5 Cir.; see *Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.,* 5 Cir., 1970, 431 F.2d 409, Part I.

Kerry P. Fitzgerald, Dallas, Tex., for defendant-appellant.

Shirley Baccus-Lobel, Asst. U. S. Atty., Dallas, Tex., for plaintiff-appellee.

Before AINSWORTH, GODBOLD and VANCE, Circuit Judges.

PER CURIAM:

Lonjinos Ramos Contreras was convicted after trial by jury on both counts of a

two-count indictment charging unlawful distribution of heroin, in violation of 21 U.S.C. § 841(a)(1).[1] He appeals, making four assignments of error. We affirm.

### I.

Appellant first claims that the trial court erred in improperly restricting the cross-examination of the Drug Enforcement Administration (DEA) undercover agent who was instrumental in appellant's arrest. The court sustained the government's objections to certain questions dealing with the agent's prior and present address, his social, political and civic associations, and his business interests and possible financial troubles. Appellant maintains that this information was relevant to illustrate the witness' background and place him in his proper setting so that his credibility and any bias or motive to testify falsely might be tested.

 The right to cross-examine a witness effectively includes a sufficient "opportunity to place the witness in his proper setting." *Alford v. United States*, 282 U.S. 687, 692, 51 S.Ct. 218, 75 L.Ed. 624 (1931); *Smith v. Illinois*, 390 U.S. 129, 88 S.Ct. 748, 19 L.Ed.2d 956 (1968). This opportunity is not, however, unlimited, and the extent of cross-examination is committed to the sound discretion of the trial court. *Alford, supra*, 282 U.S. at 694, 51 S.Ct. 77. A well-recognized limitation on the right to cross-examine a witness occurs when disclosure of the information sought would endanger the physical safety of the witness or his family. *Smith, supra*, 390 U.S. at 133, 88 S.Ct. 748 (White, J., concurring); *United States v. Hanson*, 5 Cir., 1978, 569 F.2d 406.

 In the instant case, a reasonable fear existed that disclosure of the DEA agent's home address or other places frequented by him would endanger the safety of him and his family. Prior to trial, the government had moved to preserve the sworn testimony of the agent based on information received from confidential informants that a "contract", initiated by appellant, existed for the murder of the agent. The motion was supported by the sworn affidavit of another DEA agent, and following an evidentiary hearing the motion was granted. From the circumstances presented, the trial court was entirely justified in concluding that an actual threat to the life of the agent did exist.

In *United States v. Alston*, 5 Cir., 1972, 460 F.2d 48, this court, under circumstances similar to the instant case, held that it was proper for the trial court to permit the government's key witness to refuse to disclose his home address. "[T]he purpose of *Alford/Smith* was to safeguard the opportunity for a meaningful and open cross-examination, not to require that a witness always divulge his or her home address. *Alford* and *Smith* do not erect a per se requirement that a witness' home address be divulged upon demand." *Id.* at 51. In *Alston*, this court held that the district judge had not abused his discretion since (1) the defendant had ample opportunity to place the witness in his proper setting, and (2) there existed a reasonable fear for the physical safety of the witness and his family.

As noted above, in the instant case a reasonable fear existed for the physical safety of the witness. Furthermore, the record reveals that appellant had ample opportunity at trial to "place the witness in his proper setting." The DEA agent testified on direct examination as to his name, age, past and current employment, qualifications, geographical area of assignment, and duties as special agent for the DEA. On cross-examination, the agent testified as to the alias he had used while working on the case, and disclosed some of the standard operating procedures for DEA agents. The name of the agent's supervisor was established through the testimony of another witness.

---

1. 21 U.S.C. § 841 provides, in pertinent part:

 (a) Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—

 (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance . . .

The cross-examination of the DEA agent in this case was vigorous and probative. Precluding appellant from inquiring into the witness' home address and other minor bits of background information could not have prejudiced appellant in light of such a thorough cross-examination. *United States v. Alston, supra.*

## II.

■ Appellant next contends that it was error for the trial court to admit, over his objection, evidence that he used cocaine immediately after the heroin transaction that forms the basis for his conviction. The evidence presented at trial showed that, immediately after selling a quantity of heroin to a DEA agent, the appellant offered the agent some cocaine powder and, upon the agent's refusal, appellant injested the powder himself.

Contreras argues that this evidence constituted an extraneous offense, and as such, should have been excluded under Rules 403 and 404(b), Federal Rules of Evidence[2], as irrelevant and prejudicial. However, appellant's use of cocaine was properly admitted as part of the res gestae of the illegal transaction. Moreover, such use demonstrated appellant's familiarity with illicit drugs and was therefore relevant on the question of knowledge. *United States v. Beechum,* 5 Cir., 1978, 582 F.2d 898, 911 n.15.

■ Under the rule established in the en banc opinion in *United States v. Beechum, supra,* it must be determined (1) that extrinsic offense evidence is relevant to an issue other than the defendant's character, and (2) that the probative value of the evidence is not substantially outweighed by its prejudicial impact. 582 F.2d at 911. Both requirements are met in the instant case.

■ Rule 404(b) of the Federal Rules of Evidence lists several issues on which extrinsic offense evidence may be admissible, including knowledge and common plan or scheme. The statute under which appellant was indicted requires the government to prove that appellant knew he was dealing in a controlled substance.[3] Appellant's use of cocaine after selling another substance to the DEA agent is circumstantial evidence that the appellant knew the substance to be heroin.

The probative value of the evidence is not substantially outweighed by its prejudicial impact. Appellant's own witness, Alvaredo, testified as to the use of cocaine on the afternoon in question, although he testified that it was the DEA agent—not appellant—who used the drug. Furthermore, the trial court instructed the jury immediately after the evidence was presented that "[t]his evidence is introduced for the purpose of showing knowledge on the part of Mr. Contreras." Such a limiting instruction minimizes the potential for unfair prejudice to the appellant. *United States v. Avarello,* 5 Cir., 1979, 592 F.2d 1339; *United States v. McMahon,* 5 Cir., 1979, 592 F.2d 871.

## III.

■ As his third assignment of error, Contreras contends that two questions propounded by the prosecutor to a DEA agent concerning the agent's visits to the Arcadia Body Shop, the scene of the drug sales, unfairly influenced the jury. Appellant's

---

2. Rule 403, Federal Rules of Evidence, provides that:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Rule 404(b), Federal Rules of Evidence, provides that:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

3. To give rise to criminal liability, 21 U.S.C. § 841(a)(1) requires that the manufacture or distribution of a controlled substance be done "knowingly or intentionally".

position is that these questions were an attempt to elicit evidence that the DEA agent had seen several narcotics transactions involving others not charged in the indictment, and thus establish appellant's guilt by association. The argument is without merit.[4]

The prosecutor's questions did not influence the jury since they merely restated facts that had previously been testified to. The DEA agent, prior to the disputed series of questions, testified that he had been working in an undercover capacity. On cross-examination he testified that he used an alias and had been to the Arcadia Body Shop on many occasions since April 1978. Therefore, the alleged "prejudicial" information was already in the record, and in any event, the trial court instructed the jury to disregard the questions.

" '[E]vidence withdrawn from the jury with a direction by the court that it is to be disregarded may not be the basis of reversible error.' Only where the remark is so highly prejudicial that it is incurable by the trial court's admonition is the instruction considered insufficient." *United States v. Carrillo*, 5 Cir., 1978, 565 F.2d 1323, 1326, cert. denied, 435 U.S. 955, 98 S.Ct. 1587, 55

L.Ed.2d 807; *United States v. Klein*, 5 Cir., 1977, 546 F.2d 1259; *United States v. Smith*, 5 Cir., 1975, 517 F.2d 710.

### IV.

■ As his final assignment of error, Contreras contends that the trial court erroneously allowed the government to question defense witness Alvaredo about alleged statements made to a DEA agent concerning purchases of large quantities of cocaine. Appellant argues that these statements involved criminal activity on the part of Alvaredo which did not result in a conviction, and therefore constitute improper impeachment under Rule 608(b) of the Federal Rules of Evidence.[5]

Alvaredo testified on direct examination that he observed the DEA agent lift a "coke" spoon to his nose, and that he knew it was a "coke" spoon "because I have seen a bunch of them in Playboys and this and that."

On cross-examination, the prosecutor inquired into Alvaredo's knowledge of cocaine and related paraphernalia, at one point asking whether Alvaredo had discussed with a DEA agent "going to Ft. Stockton to purchase large quantities of cocaine."[6] Alvar-

---

4. The following colloquy took place during the redirect examination of the DEA agent:

 Q. Why had you been going to the Arcadia Body Shop at that time in 1978?
 MR. FITZGERALD: To which I would object, Your Honor, unless it can be tied in some way to make it relevant and material to the charge.
 THE COURT: I sustain the objection.
 Q. (By Mr. Guthrie) Well, let me ask you on each occasion that you went to the Arcadia Body Shop that the defense attorney asked you about, did you go in an undercover capacity?
 MR. FITZGERALD: To which we would renew our objection because now the assistant prosecutor is trying to suggest before the jury commission of criminal activity, establish guilt by association if you will.
 THE COURT: I sustain the objection.
 Appellant's counsel then requested that the jury be instructed to disregard the question, and the instruction was given.

5. Rule 608(b), Federal Rules of Evidence, provides that:

 Specific instances of the conduct of a witness, for the purpose of attacking or support-

ing his credibility, other than conviction of a crime as provided in rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

6. The controverted cross-examination of Alvaredo developed as follows:

 Q. You recognized it as a coke spoon, is that right?
 A. That is right.

 Q. How did you recognize it as a cocaine spoon?

 A. Because I have seen it in a bunch of books.

 Q. Isn't it a fact that you know a little bit about cocaine?

edo denied the discussion, and the court properly overruled the defense's objection to the inquiry.

Contrary to appellant's assertions, Rule 608 of the Federal Rules of Evidence is not applicable to this situation. This is not a case where specific instances of misconduct, totally unrelated to the witness' substantive testimony, were used in an attempt to impeach. Alvaredo's direct testimony revealed the alleged basis for his knowledge that the spoon he observed was a "coke" spoon. The government was entitled to test the credibility and factual foundation of that statement.

The trial court has broad discretion concerning the scope of cross-examination. *United States v. Zepeda-Santana*, 5 Cir., 1978, 569 F.2d 1386, 1389, *cert. denied*, 437 U.S. 907, 98 S.Ct. 3098, 57 L.Ed.2d 1138;

*United States v. Onori*, 5 Cir., 1976, 535 F.2d 938, 945. Furthermore, the scope of the direct examination may be exceeded on cross-examination in an effort to test the truthfulness of the witness. *United States v. Gremillion*, 5 Cir., 1972, 464 F.2d 901, 908, *cert. denied*, 409 U.S. 1085, 93 S.Ct. 683, 34 L.Ed.2d 672; *United States v. Dillon*, 5 Cir., 1971, 436 F.2d 1093, 1094. The questioning of Alvaredo was properly within the scope of cross-examination and did not constitute reversible error.

AFFIRMED.

A. No, I don't, at all.
Q. Isn't it a fact that you discussed with Special Agent Hernandez on many occasions going to Ft. Stockton to purchase large quantities of cocaine?
A. No.