Eugene ROBINSON, Appellant,

v.

UNITED STATES, Appellee.

No. 83–372.

District of Columbia Court of Appeals.

Argued Sept. 26, 1984.

Decided Jan. 16, 1985.

---

Allie Sheffield, Public Defender Service, Washington, D.C., with whom James Klein, Public Defender Service, Washington, D.C., was on brief, for appellant.

Joan C. Barton, Asst. U.S. Atty., Washington, D.C., with whom Joseph E. diGenova, U.S. Atty., Michael W. Farrell and Thomas J. Tourish, Jr., Asst. U.S. Attys., Washington, D.C., were on brief, for appellee.

Before MACK, NEWMAN and BELSON, Associate Judges.

NEWMAN, Associate Judge:

 Robinson appeals his convictions of first degree burglary, assault with a dangerous weapon, and carrying a dangerous weapon. He contends that the trial court improperly admitted evidence of his prior criminal conduct to show his intent and motive and the circumstances surrounding the offenses. We conclude that the evidence of Robinson's prior criminal conduct was properly admissible under the motive and intent exceptions of *Drew v. United States*, 118 U.S.App.D.C. 11, 16, 331 F.2d 85, 90 (1964). *See Wooten v. United States*, 285 A.2d 308, 309 (D.C. 1971). Robinson also argues that the trial court committed reversible error by admitting testimony and permitting argument about his prior incarceration and that of his primary defense witness. Although this question is a close one, we conclude that the trial court did not abuse its discretion. *See generally Johnson v. United States*, 398 A.2d 354 (D.C.1979). Therefore, we affirm Robinson's convictions.

The incident from which Robinson's convictions arose occurred on June 27, 1981. At that time Michael Mack, the brother of Robinson's former girlfriend, Yvette Slye, lived in a basement apartment in his mother's house at 1310 Irving Street, Northwest. Mack's girlfriend, Annie Vance, lived there as well. On the evening of the 27th, when Mack was watching television in bed, he heard footsteps on the basement stairs, and saw a figure come into the sleeping area. When the man was a few feet from the bed, Mack recognized him as Robinson.

Mack saw a shiny object, and when Robinson was standing "right over the bed," he suddenly "lashed out" at Mack. Mack caught Robinson's wrist and kicked him into the wall. During the struggle that followed, Robinson stabbed Mack in the hand, and the knife broke. Robinson then tried to stab Mack's girlfriend, Annie Vance. In addition, the television and a room divider were knocked over, and Robinson bit Mack on the back. Mack never had the knife in his hands during the fight. Mack saw a soda bottle on the floor and tried to get it to defend himself, but Robinson grabbed it first and struck Mack on the side of the head, causing a one-and-a-half inch cut that could not be surgically stitched. Although he was bleeding, Mack went upstairs and called to his family to notify the police; in the meantime, Robinson ran out the door. When the police arrived, Mack described what had happened and told them that Eugene Robinson had inflicted his injuries. Afterward, Mack was taken to the hospital, where he was treated for the previously described wounds and additional scratches. Mack described this incident at trial, and the sequence of events was reiterated by Vance.

During the trial, the court permitted testimony regarding several previous instances of misconduct by Robinson. These prior bad acts occurred at an unspecified time, possibly 2–3 weeks before the charged incident. Mack testified that after an argument with Robinson, Robinson had told Mack, "[Y]ou better watch yourself." Slye testified that her romantic relationship with Robinson ended on a Sunday in June 1981, when Robinson slapped her, tore up her

room, and started to burn a blouse that was in her closet. Robinson warned Slye that he would hurt anyone she dated.

Robinson claims that the trial court abused its discretion by admitting this evidence of his prior bad acts. The government asserts that the evidence was properly admissible under the motive and intent exceptions of *Drew v. United States, supra; Wooten v. United States, supra.* We agree. *See Gezmu v. United States,* 375 A.2d 520, 522 (D.C.1977); *Bruce v. United States,* 471 A.2d 1005, 1006–07 (D.C.1984); *Willcher v. United States,* 408 A.2d 67, 76 (D.C.1979). However, the government further asserts that the evidence was admissible to explain the circumstances surrounding the offenses with which he was charged. *See Fairbanks v. United States,* 96 U.S.App.D.C. 345, 347, 226 F.2d 251, 253 (1955). The government cites to *Jackson v. United States,* 329 A.2d 782, 790 (D.C. 1974), *cert. denied,* 423 U.S. 851, 96 S.Ct. 95, 46 L.Ed.2d 74 (1975), for the proposition that introduction of evidence of surrounding circumstances is not limited to circumstances *immediately* surrounding the offense charged. This reading of *Jackson* is incorrect; the evidence of prior crimes in *Jackson* was admitted under the motive exception to *Drew v. United States, supra,* and not to establish any surrounding circumstances. The surrounding circumstances exception refers to circumstances *immediately* surrounding the offense charged. *Green v. United States,* 440 A.2d 1005, 1007 (D.C.1982). The trial court acted correctly by admitting the evidence of prior crimes under the motive and intent exceptions, but not to establish the surrounding circumstances.

*Affirmed.*